IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


**ROBERT E. COOPER, JR.,**

    **Plaintiff,**

vs.                                                             CASE NO. 1:05cv22-MP/WCS

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

    _____/


## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D).  It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Robert E. Cooper, Jr., applied for disability insurance benefits and supplemental security income benefits.  Plaintiff was 33 years old at the time of the administrative hearing, has a 12th grade equivalency education, and has past relevant work as a general laborer, a heavy construction worker, and a welder.  Plaintiff alleges disability due to upper and lower back pain, headaches, neck problems, and

depression.  The Administrative Law Judge found that Plaintiff has back pain, alcohol addiction, and depression, and that those impairments are "severe."  He further found that Plaintiff retained the residual functional capacity to do a significant range of medium work, with limitations, and cannot do his past relevant work.  After hearing testimony from a vocational expert, the Administrative Law Judge found that Plaintiff could do the work of ticket taker, sorter, and car wash attendant.  He thus concluded that Plaintiff is not disabled as defined by Social Security law.

**Analysis**

### A hypothetical put but not adopted

Plaintiff first argues that the Administrative Law Judge should have found that Plaintiff suffers from the impairments and restrictions set forth in the statement from Plaintiff's treating physician, Dr. Andrea Kreithen, dated March 14, 2002.  Plaintiff phrases this as error in not finding Plaintiff to be disabled "in light of the [vocational expert's] testimony."  The testimony was based upon a hypothetical put to the expert adopting the restrictions of Dr. Kreithen of March 14, 2002.  The assumption of this claim is that the Administrative Law Judge should have concluded that the restrictions accurately described Plaintiff's disability.

In that statement, Dr. Kreithen released Plaintiff back to work, with restrictions. R. 205 (on of the pages in Exhibit 5F).  Plaintiff was restricted to sedentary work, and was to try to maintain a vertical or horizontal position, was to take frequent breaks if needed on deliveries and stretch if necessary, and was to be given half days to get accustomed to his position, if possible.  *Id*.  He was not to engage in prolonged sitting, bending, twisting, or any stooping, squatting, pulling or pushing.  *Id*.  In a similar

statement on April 16, 2002, the treating physician said that Plaintiff was not to return to work and was to follow up with a specialist. R. 202. The Administrative Law Judge hypothetically included these restrictions in a question to the Vocational Expert, including a requirement for frequent breaks, and asked if there were jobs that such a person could do. R. 330-331. The Vocational Expert said no, that the requirements of frequent breaks and half-days of work to become accustomed to the work, would "rule out general employment." R. 331.

Since the Administrative Law Judge included those restrictions in one of the hypothetical questions posed to the vocational expert, it is obvious that he gave consideration to them. He did not, however, discuss these restrictions in his opinion, though he mentioned the exhibit in which the restrictions are set forth (that is, Exhibit 5F).[1] R. 15. Since the Administrative Law Judge ultimately concluded that Plaintiff still has the residual functional capacity to do a broad range of medium work, and did so after stating that he had considered Plaintiff's testimony and the objective medical findings (R. 17), it is also obvious that he discounted the severity of, or lasting effects of, Dr. Kreithen's work restrictions as set forth in her statement on March 14, 2002.

The opinion of a claimant's treating physician must be accorded substantial or considerable weight by the Commissioner unless good cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence. Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992). This circuit finds good cause to

---

[1] Exhibit 5F is a sixteen page exhibit, and among the pages are the restrictions set forth above at R. 205.

afford less weight to the opinion of a treating physician "when the: (1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-1241(11th Cir. 2004). The Administrative Law Judge must clearly articulate the reasons for rejecting the treating physician's opinion. Id.

Plaintiff has not faulted the Administrative Law Judge for not specifically discussing the opinion of Dr. Kreithen or for failing to give his reasons for discounting that opinion. Thus, the issue for this court is whether the Administrative Law Judge's conclusion as to Plaintiff's residual functional capacity is supported by substantial evidence in the record, giving due consideration to the statement of Dr. Kreithen.[2] To make that determination, all of the medical evidence must be reviewed.

Dr. Kreithen first saw Plaintiff on January 8, 2002, and her impression was that Plaintiff had sciatica complicated by depression. R. 216. She found that he had good reflexes, slight decrease in strength on the left, and fair range of motion. Id. Images of

---

[2] This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

the thoracic and cervical spine on January 9, 2002, were "unremarkable."  R. 214-215.  There was narrowing detected at L5-S1.  R. 213.  Dr. Kreithen diagnosed chronic back pain on January 17, 2002, and referred Plaintiff to a back specialist.  R. 212.  She also encouraged Plaintiff to stop drinking alcohol.  *Id.*  On February 12, 2002, she noted that Plaintiff reported that the medications were not working and he continued to drink.  R. 209.  They were still awaiting a "back consult."  *Id.*

On March 5, 2002, Dr. Kreithen reported that Plaintiff said that he continued to have a lot of right side leg and hip pain, and medications had not helped much.  R. 206.  He also continued to report motor weakness.  *Id.*  Medications did not seem to be helping his depression, and he continued to drink.  *Id.*  It was noted that he might need an MRI.  *Id.*  On March 14, 2002, Dr. Kreithen provided the "physician statement" with the restrictions noted above.  R. 205.  She also referred Plaintiff to a back specialist.  *Id.*  It was noted that Plaintiff had wanted to be released to go back to work.  R. 204.

An MRI was conducted on April 10, 2002.  R. 203.  No abnormalities were noted at L5-S1, L5-L5, and L1-L2  *Id.*  Mild disc dessication was found at L3-L4.  *Id.*  At L2-L3 there was a mild protrusion on the left proximal neural foramen, also described as "very shallow," with no spinal stenosis.  *Id.*  The "no return to work" statement was signed on April 16, 2002.  R. 202.  The final note is on that same date, that Plaintiff needed to see a specialist, and Dr. Kreithen said that there was nothing more that she could do.  R. 201.

The Administrative Law Judge noted the MRI findings and Dr. Kreithen's efforts to persuade Plaintiff to stop drinking alcohol.  R. 15.  He did not mention the work

restrictions, but as noted above, he did provide those restrictions in his hypothetical to the vocational expert, so he obviously considered them.

Defendant argues that the restrictions imposed by Dr. Kreithen pertained only to his job at that time with Gilchrist Building Supply. Those duties including helping customers, stocking shelves, sweeping and mopping, cleaning once in a while, and making deliveries. R. 205. The recommendation that Plaintiff take frequent breaks, if needed, was with respect to deliveries at that job. *Id*.

A year earlier, on June 5, 2001, Plaintiff was seen by Dr. John Baker. R. 185. Dr. Baker noted that Plaintiff had returned to work as a welder, with a 20 pound lifting restriction, and he subsequently did that work, but was laid off. R. 183. Dr. Baker reported that Plaintiff's pain had gotten worse, and was aggravated by walking, standing, sitting, and activity. *Id*. It was also noted that he drank six to twelve drinks a day. R. 184. Gait, heel-toe gait, straight leg raising, range of motion of the hips and knees, were all normal. *Id*. Some muscle spasm was observed in the lower spine. *Id*. An MRI showed disc injury at L2-L3 and L3-L4. R. 185. Dr. Baker released Plaintiff to work with a restriction of no lifting over 25 pounds and frequent change of position, and with the potential need for retraining for work with this restriction. *Id*. The basics of this evidence were discussed by the Administrative Law Judge. R. 15.

The Administrative Law Judge also discussed the findings of A. Ramadan, M.D., who conducted a consultative examination on June 20, 2002. R. 15. Dr. Ramadan noted that Plaintiff consumed five to seven cases of beer a week, and had done so for the past two years. R. 218. He found all of Plaintiff's major joints to be "within normal

limits." R. 221. There was no swelling, and no limitation of range of motion. *Id*. With regard to the back, Dr. Ramadan wrote:

> Spine is well aligned. Vague pain and tenderness in the lumbar sacral area. The patient had full range of motion. The range of motion in the upper and lower extremities and the spine was always associated with pain with active and passive range of motions, but there were no limitations.

*Id*. Gait was normal, and there were no motor deficits in the extremities. *Id*.

Finally, the Administrative Law Judge discussed the medical treatment provided to Plaintiff by Amy K. Kirby, Physician's Assistant, at the Trenton Medical Center, Inc. R. 16 (referring to Exhibits 11F and 15F). On September 3, 2002, P.A. Kirby noted that Plaintiff's disability was questionable. R. 256, 255 (duplicates, R. 294, 293). On October 8, 2002, she said that Plaintiff was drinking 12 to 24 beers a day, and was not interested in decreasing at this time. R. 254, 289. Treatment continued on four occasions in 2003. R. 287-290. On February 12, 2004, Plaintiff reported he was decreasing his consumption of alcohol. R. 286. He reported he continued to have hip pain and diffuse pain and parasthesias. *Id*.

In summary, save for the work restrictions provided by Dr. Kreithen on one particular day, substantial evidence does exist in this record to support the Administrative Law Judge's determination that Plaintiff has the residual functional capacity to do medium work with some limitations. The MRI did not show significant spinal defects or injuries, most range of motion studies were negative, though with some pain, and even Dr. Kreithen did not express a general opinion as to Plaintiff's future prospects for work. It was not error for the Administrative Law Judge to fail to adopt these work restrictions as to Plaintiff's residual functional capacity.

**A hypothetical not posed**

Plaintiff also argues that the Administrative Law Judge failed to include another set of restrictions in his hypothetical question to the vocational expert.[3] This, similar to the last claim, assumes that the Administrative Law Judge erred in failing to credit the mental restrictions.

The restrictions at issue appear in a Mental Residual Functional Capacity Assessment Form. R. 265-267. That form was completed by the state agency physician, Steve L. Wise, Ph.D., who reviewed the records but did not treat or examine Plaintiff. *Id.* Dr. Wise determined that Plaintiff was moderately limited in: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 265-266. Dr. Wise explained:

> Claimant's primary mental issue is alcohol dependence. Recent MER (10/8/02) notes cont. to drink 12-24 beers/day not interested in decreasing at this time!! Though his MSE suggests retained capacity for simple tasks from a mental perspective, who would hire an alcohol dependent individual. *His depression does not appear particularly severe.*

R. 267 (emphasis added).

The limitations found by Dr. Wise, therefore, were based entirely upon Plaintiff's addiction to alcohol. "An individual shall not be considered to be disabled for purposes

---

[3] Plaintiff argues that the mental restrictions should have been combined with the physical restrictions from Dr. Kreithen. However, since the physical restrictions were properly excluded from the operative hypothetical, the only remaining issue is whether the mental restrictions should have been included.

Case No. 1:05cv22-MP/WCS

of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. S 423(d)(2)(C). "[I]in disability determinations for which the medical record indicates alcohol or drug abuse, the claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination." Doughty v. Apfel, 245 F.3d 1274, 1280 (11th Cir. 2001). Thus, it was not error for the Administrative Law Judge to fail to adopt those limitations either in his finding of residual functional capacity or in his hypothetical to the vocational expert.

## Conclusion

Thus, considering the record as a whole, the findings of the Administrative Law Judge are based upon substantial evidence in the record. Accordingly, the decision of the Commissioner should be affirmed.

For these reasons, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 9, 2005.

                                                s/    William C. Sherrill, Jr.
                                                **WILLIAM C. SHERRILL, JR.**
                                                **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and**

**recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 1:05cv22-MP/WCS